USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/12/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS ALBERTO HERNANDEZ GUILLEN,

Petitioner,

-against-

KENNETH GENALO, *New York Field Office Director Department of Homeland Security Immigration and Customs Enforcement (In his official capacity)*, et al.,

Respondents.

1:26-cv-1524-MKV

ORDER GRANTING IN PART PETITION FOR HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

On February 24, 2026, Petitioner, through counsel, filed a petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2241, [ECF No. 1] (the "Petition" or "Pet."), together with a motion for a temporary restraining order ("TRO") enjoining Respondents from moving Petitioner out of New York or removing him from the United States while the Court considers the Petition [ECF No. 2 ("Mot.")]. The Court denied the TRO and directed the Government to respond to the Petition. [ECF No. 6].

The Government filed a letter response, [ECF No. 8] (the "Opposition" or "Opp."), attaching seven exhibits, [ECF Nos. 8-1–7], and the declaration of Kareem Biggs, [ECF No. 9]. Petitioner replied, [ECF No. 11] (the "Reply"), attaching eleven exhibits, [ECF Nos. 11-1–11].[1] Shortly thereafter, Petitioner filed an "advisement" indicating that the Ninth Circuit had stayed a judgment upon which he had relied in his reply. [ECF No. 12] (citation modified). Petitioner then filed a motion to expedite consideration of the Petition. [ECF No. 13].

In the interim, the Second Circuit decided *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha,* No. 26-104, 2026 WL 2942994

[1] Petitioner appears to have filed the same reply documents twice. *See* [ECF No. 10].

(U.S. Oct. 1, 2026) ("*Barbosa da Cunha*"). The Court directed the Government to file a supplemental letter addressing the impact, if any, of the *Barbosa da Cunha* decision on this case. [ECF No. 14]. The Government did so, [ECF No. 15] (the "Supplemental Opposition" or "Supp. Opp."), attaching two exhibits, [ECF Nos. 15-1–2]. Petitioner replied. [ECF No. 16] (the "Supplemental Reply" or "Supp. Reply"). Finally, Petitioner filed another "advisement" seeking relief under *Fulton v. Mullin*, 181 F.4th 292 (2d Cir. 2026). [ECF No. 17] (citation modified).

## BACKGROUND

Petitioner is a native and citizen of El Salvador who arrived in this country illegally in 2019 and has been detained by Immigration and Customs Enforcement ("ICE") since April 2025. *See* Pet. ¶¶ 2, 19, 25.[2] A "Transnational Crime Task Force" identified him as a target and arrested him pursuant to a warrant. [ECF Nos. 8-1, -2]. He was afforded a bond hearing at which the Immigration Judge found—considering, *inter alia*, evidence of gang membership—that Petitioner had "not met his burden of proof to establish that he does not pose a danger to the community." [ECF No. 15-1] at 11–12.[3] Petitioner appealed to the Board of Immigration Appeals (the "BIA"). *See* Reply ¶ 6. The BIA dismissed Petitioner's appeal, citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220-28 (BIA 2025), which had been issued after Petitioner's bond hearing. [ECF No. 15-2].

[2] The Petition and Petitioner's subsequent filings indicate conflicting information concerning the date of Petitioner's initial arrest. *Compare, e.g.*, *id.* ¶ 19 ("January 28, 2025 at approximately 2:30 P.M.") *with id.* ¶ 2 ("April 30, 2025"), [ECF No 11-1] ¶ 4 (same, in signed affidavit).

[3] Petitioner vehemently contests this determination. *See generally* Reply; [ECF No. 11-1]. The Court, however, lacks "jurisdiction over" a "challenge" to the bond "hearing's outcome." *Wang v. Mullin et al.*, No. 26 CIV. 6289 (PAE), 2026 WL 2720593, at *4 n.4 (S.D.N.Y. Sept. 15, 2026) (citing 8 U.S.C. § 1226(e)). Nor does the Court resolve disputes concerning, for example, allegations that Petitioner was involved in an attempted murder in El Salvador or since-recanted allegations by the mother of one of his children concerning his possession of a firearm, *see generally* Reply; [ECF No. 11-1], which were likewise addressed by the Immigration Judge in connection with Petitioner's bond hearing, *see* [ECF No. 15-1] at 9–12.

Petitioner is subject to an order of removal, having been adjudicated "an alien present in the United States who has not been admitted or paroled." [ECF No. 8-4] at 1 (citing 8 U.S. Code § 1182(a)(6)(A)(i)); [ECF No. 9] ¶¶ 12, 15. He has appealed to the BIA, and he also "fully intend[s] to further appeal to the US Court of Appeals for the Second Circuit" if he loses before the BIA. Petition ¶ 18.[4] In 2024, an earlier application for refugee resettlement was deemed abandoned, *see* [ECF No. 8-6], although Petitioner contends that it has somehow been preserved, *see* Reply at 8.

At the time he filed his Petition, Petitioner was detained in New York. *See* [ECF No. 9] ¶¶ 6–7. He was subsequently transferred to Pennsylvania. *Id.* ¶ 8. He has apparently "not requested a second" bond hearing. Supp. Opp. at 2.

**ANALYSIS**

The Court begins by noting that Petitioner's invocation of *Fulton*, 181 F.4th 292, in pursuit of interim relief, *see* [ECF No. 17], is utterly meritless. In that case, the Second Circuit found that the petitioner was "entitled to release" "pending a decision by the Court of Appeals regarding the District Court's dismissal of his habeas corpus petition" because "(1) his petition raise[d] substantial claims, and (2) extraordinary circumstances exist[ed] that ma[d]e the grant of bail necessary to make the habeas remedy effective." *Id.* at 292 (citing *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001)). The extraordinary circumstance in that case was the fact that, in the Second Circuit's view, petitioner was facing "near certain death" if he remained in custody. *Fulton*, 181 F.4th at 293. It should go without saying that, in the case now before the Court, Petitioner's "eating

[4] Petitioner notes that, because he is appealing the order of removal, he is "not currently subject to a final order of removal." *Id.* ¶ 5; *see Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) a determination by the BIA affirming such order, or (2) the expiration of the period in which the alien is permitted to petition the BIA for review of the order." (citation modified)).

Maruchan soup all day" while detained, [ECF No. 17] at 2, does not even approach that level of exigency.[5]

Turning to the Petition itself, the central question at this point is whether Petitioner is entitled to a bond hearing under *Barbosa da Cunha*. *See* Supp. Reply at 3 ("The Court should respectfully find that *Barbosa Da Cunha* . . . applies in this case and compels . . . petitioner's immediate release" or, "at a very minimum, it is requested that this Court issue and [sic] Order that Petitioner be provided a bond hearing before an Immigration Judge.").[6]

The Government's only argument is that Petitioner's "detention is not governed by *Barbosa da Cunha* because he was not in the Second Circuit at the time it was decided." Supp. Opp. at 1. In the Government's view, because Petitioner is in the Third Circuit, "this Court's decision in [*Chen v. Almodovar*, 815 F. Supp. 3d 314 (S.D.N.Y. 2025)] would remain applicable absent any Third Circuit decision that would vacate *Matter of Yajure Hurtado*, which held that detention of inadmissible aliens such as Petitioner is mandatory under 8 U.S.C. § 1225(b)(2)(A)." Supp. Opp. at 1–2 (citation modified). The Government cites no authority in support of this rather surprising

[5] Nor do his related complaints of "constant headaches," "anxiety and tremendous stress," and "depression"—for which, notably, he "is seeing a psychologist every 15 days." *Id.* The Court is sympathetic to the previously lodged complaint that Petitioner is being denied "privileges to practice his Christian religion." [ECF No. 13] at 1; *see also* [ECF No. 13-1] at 2 ("I would like to go to the church??? Catholic or Christian Is [sic] doesn't matter . . ."). Nevertheless, while it appears that Petitioner was denied permission to leave the facility to attend religious services, ICE's website indicates that, where he is detained, "clergy may visit [him] at any time," provided that "prior arrangements" are made "with the Chaplain's Office." U.S. Immigr. & Customs Enf't, *Moshannon Valley Processing Center*, ICE, https://www.ice.gov/detain/detention-facilities/moshannon-valley-processing-center.

[6] While Petitioner technically asks for "immediate release," "the purported injury [Petitioner seeks] to remedy [is] the denial of a bond hearing rather than the detention itself." *Barbosa da Cunha v. Freden*, No. 25-3141, 2026 WL 2880761, at *24 n.23 (2d Cir. Sept. 25, 2026) (Menashi, *J.*, dissenting from denial of rehearing *en banc*); *see also Lopez v. Genalo*, No. 26 CIV. 5394 (JHR), 2026 WL 2907666, at *4 (S.D.N.Y. Sept. 28, 2026) ("Where . . . ICE failed to provide a bond hearing at the outset of detention but exercised its discretion in detaining a noncitizen, a bond hearing—not release—is the appropriate remedy." (citation modified, collecting cases)). Because it was not raised by the Government, the Court does not address here the question of whether a *habeas corpus* proceeding is even the appropriate vehicle for what is, in essence, a request for a bond hearing. *See Barbosa da Cunha*, 2026 WL 2880761, at *24 ("Allowing an alien to bring such a claim in habeas would require us to broaden the scope of habeas beyond recognition." (citation modified) (Menashi, *J.*, dissenting from denial of rehearing *en banc*)).

argument, and the Court is aware of none. Moreover, in a development noted by neither Party, the Third Circuit has since held that "[Section] 1225(b)(2)(A) does not apply to Petitioners" who, like Petitioner here, "were not detained at the border." *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287, 305 (3d Cir. 2026).

Petitioner is correct, then, that his detention is governed by Title 8, United States Code, Section 1226(a). Accordingly, he "may be arrested and detained," and the Government "may" either "continue to detain" him or "may release" him on bond. *Id.*[7]

Petitioner did receive a bond hearing, but that was over 16 months ago. *See* [ECF No. 9] ¶¶ 18–19 (bond hearing scheduled for and conducted on "June 18, 2025"). Moreover, in accordance with applicable regulations, *see* 8 C.F.R. 236.1(c)(8), he was made to bear the burden of "establish[ing] to the satisfaction of the Immigration Judge . . . that he does not present a danger to persons or property, is not a threat to national security, and does not pose a flight risk." [ECF No. 15-1] at 8.

While "nothing in § 1226(a)'s text . . . even remotely supports the imposition of" "periodic bond hearings every six months in which the [Government] must prove by clear and convincing evidence that the alien's continued detention is necessary," *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citation modified), the Second Circuit has held that, sometime between six and fifteen months, "due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.13 (2d Cir. 2020); *see also Black v. Decker*, 103 F.4th 133, 150 (2d Cir. 2024) ("Any immigration detention exceeding six months without a bond hearing raises serious due process concerns." (citation modified)). Petitioner, then,

[7] Applicable regulations also entitle Petitioner to appeal from an "initial custody determination by the district director." 8 C.F.R. 1236(d).

is entitled under the Constitution to a new bond hearing at which the Government must establish by "clear and convincing" evidence that he is a "danger or flight risk." *Velasco Lopez*, 978 F.3d at 855.[8]

Of course, Petitioner "has not requested a second" bond hearing. Supp. Opp. at 2. The Court could rely on the prudential doctrine of administrative exhaustion to deny the Petition on that basis. *See, e.g.*, *Batista v. Genalo*, No. 1:26-CV-05408-MKV, 2026 WL 2169849, at *3 (S.D.N.Y. July 28, 2026). But the Government—focused as it was on its novel and since-mooted choice-of-law argument—does not argue failure to exhaust. Nor, for that matter, does the Government point out the obvious: Petitioner "has the keys in his pocket and can end his detention immediately by withdrawing from court and returning to his native land." *Fulton*, 181 F.4th at 295 (2d Cir. 2026) (Menashi, *J.*, dissenting).

The Court will adhere to binding precedent, *see Barton v. Ne. Transp., Inc.*, No. 21-CV-326 (KMK), 2022 WL 203593, at *11 (S.D.N.Y. Jan. 24, 2022) ("It is an axiomatic principle of American jurisprudence that district courts are bound by the decisions of the Supreme Court of the United States and those of the Circuit Court of Appeals in their own circuit[.]" (citation modified, collecting cases)), and decide only the issues actually presented by the Parties. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. 339, 342 (2026) ("Federal courts adhere to the principle of party presentation."). Doing so here means granting the Petition insofar as it seeks a new bond hearing, which should be conducted according to the standards set forth in *Velasco Lopez*, 978 F.3d 842.

The Clerk of Court is respectfully requested to terminate this case.

---

[8] As a result, the Court need not revisit the question of whether arguments "based solely on regulations"—like, for example, Petitioner's challenge to the BIA's dismissal of his custody-determination appeal—are "cognizable in habeas." *Turcios v. Mullin*, No. 1:25-CV-8150-MKV, 2026 WL 1180124, at *13 (S.D.N.Y. Apr. 30, 2026).

**SO ORDERED.**

**Date: November 12, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**